IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CIRCELI WHITTLE,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br>Case No. 2:15-CV-379 TS<br><br>District Judge Ted Stewart |

This matter comes before the Court on Plaintiff Circeli Whittle's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.*

1

affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ.[6]

## II.  BACKGROUND

### A.   PROCEDURAL HISTORY

On April 3, 2012, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on May 8, 2011.[7] The claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an ALJ, which was held on May 8, 2013.[8] The ALJ issued a decision on August 16, 2013, finding that Plaintiff was not disabled.[9] The Appeals Council denied Plaintiff's request for review on March 24, 2015,[10] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[11]

### B.   MEDICAL HISTORY

On June 19, 2012, Plaintiff was seen by William Drenguis, M.D., complaining of back pain, ulcers, and anemia.[12] Plaintiff reported to Dr. Drenguis that she was able to take care of her daily personal needs and was able to take care of her pet cats.[13] Plaintiff stated that she did

---

[4] *Richardson*, 402 U.S. at 401.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 170–71.

[8] *Id.* at 37–68.

[9] *Id.* at 21–31.

[10] *Id.* at 1–7.

[11] 20 C.F.R. § 422.210(a).

[12] R. at 311.

[13] *Id.* at 312.

her own shopping, cooking, and housekeeping, and enjoyed watching television and playing with her cats.[14] Plaintiff stated she was able to walk approximately two blocks before stopping because of fatigue and back pain, could sit for at least an hour, and could stand for about 15 minutes.[15]

Upon examination, Plaintiff could walk from the waiting room to the exam room without difficulty.[16] She could also take off and put on her shoes and get on and off the examination table without assistance.[17] Plaintiff had a normal gait.[18] Plaintiff's range of motion was limited by lumbar pain and she had shooting pain in her left leg.[19]

Dr. Drenguis diagnosed lumbar disk disease with symptoms consistent with a left L5 radiculopathy, duodenal ulcers, and a history of anemia.[20] Dr. Drenguis opined that Plaintiff could stand and walk for a total of four hours in an eight-hour day, could sit for six hours, could lift twenty pounds occasionally and lift ten pounds frequently, and could occasionally climb, stoop, kneel, crouch, and crawl.[21]

Plaintiff saw John T. Lloyd, Ph.D., on June 21, 2012.[22] Plaintiff stated that she had been depressed for most of her life, but had not received much treatment.[23] Plaintiff stated that she

---

[14] *Id.* at 312.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 313.
[19] *Id.* at 313–314.
[20] *Id.* at 314.
[21] *Id.*
[22] *Id.* at 316.
[23] *Id.*

was isolated, did not go out, had suicidal thoughts and sleep problems, had memory problems, and described herself as moody and irritable.[24]

Dr. Lloyd noted that Plaintiff was appropriately dressed and groomed.[25] He stated that Plaintiff was candid, and her speech was soft-spoken and abundant.[26] During the evaluation, Plaintiff was cooperative, had good eye contact, and had no conversational difficulties.[27] Plaintiff had good recall and her attention and concentration were adequate.[28] Describing her activities of daily living, Plaintiff stated that she took care of her cats, made meals, watched television, took naps, and worked on the computer.[29]

Dr. Lloyd diagnosed Plaintiff with dysthymic disorder, mood disorder due to chronic pain and anemia, anxiety disorder, and assessed a GAF score of 60, reflecting moderate difficulties.[30] Plaintiff's prognosis was guarded, as her depression was volatile and probably would be a life-long issue.[31] However, Dr. Lloyd believed that as Plaintiff's physical symptoms improved so would her psychological symptoms.[32] Dr. Lloyd believed that Plaintiff could manage both simple and complex occupations, but because of her depression and anxiety she may have difficulty in occupations requiring her to have contact with other people.[33]

---

[24] *Id.*
[25] *Id.* at 317.
[26] *Id.*
[27] *Id.* at 318.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 319.
[31] *Id.*
[32] *Id.*
[33] *Id.*

4

In July 2012, Michael L. Brown, Ph.D., a state agency psychologist, reviewed the evidence and assessed Plaintiff's mental residual functional capacity.[34] Dr. Brown opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[35] He found that Plaintiff was markedly limited in her ability to interact appropriately with the general public.[36] Otherwise, he found no significant limitations.[37] Dr. Brown concluded that Plaintiff could work in the proximity of coworkers, but not collaboratively, could accept instructions from supervisors, but could not work in jobs requiring interaction with the general public.[38]

On November 16, 2012, John F. Robinson, Ph.D., a state agency psychologist, reviewed Plaintiff's record and conducted a mental residual functional capacity assessment.[39] Dr. Robinson stated that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods.[40] Dr. Robinson found that Plaintiff was markedly limited in her ability to

---

[34] *Id.* at 80–82.
[35] *Id.* at 80–81.
[36] *Id.* at 81.
[37] *Id.* at 80–82.
[38] *Id.* at 82.
[39] *Id.* at 97–98.
[40] *Id.*

5

interact appropriately with the general public.[41]  Dr. Robinson concluded that Plaintiff could sustain concentration on simple repetitive and semi-complex tasks.[42]

Plaintiff began treatment with Joseph Cress, M.D., on November 29, 2012.  Plaintiff presented with suicidal ideation with no plan.[43]  She reported excessive worry, loss of motivation, and lack of interest.[44]  Plaintiff stated she had a history of depression that was exacerbated by her health and financial issues.[45]  Dr. Cress noted that Plaintiff was appropriately dressed and groomed.[46]  She was calm and cooperative.[47]  Her eye contact was good, her speech was normal, and a rapport was easily established.[48]  While her mood was depressed, her affect was appropriate.[49]  Dr. Cress noted that there were no problems with Plaintiff's thought process or content, Plaintiff was alert and oriented, her attention and concentration were adequate, and her memory was intact.[50]  Plaintiff's judgment, insight, and impulse control appeared adequate.[51]  Dr. Cress diagnosed depressive disorder, anxiety disorder, and assessed a GAF score of 60.[52]

---

[41] *Id.* at 98.
[42] *Id.*
[43] *Id.* at 462.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.* at 463.

Plaintiff's treatment goals were to focus on surviving, eliminating suicidal ideation, decreasing worry and fear, and improving motivation.[53]

Plaintiff saw psychiatric nurse practitioner Margaret M. Depew on December 15, 2012.[54] Plaintiff presented with mild emotional distress.[55] Plaintiff stated that she had been depressed much of her life, and that stress and anxiety made it worse.[56] Ms. Depew noted that Plaintiff was calm, cooperative, and in good behavioral control.[57] Plaintiff was well groomed and well nourished.[58] She was able to sit calmly during the interview and was able to answer questions fully.[59] Ms. Depew found that Plaintiff was alert and oriented and had appropriate recall and attention.[60] Plaintiff had good insight into her mental illness, and her judgment and intelligence were within normal limits.[61] Ms. Depew diagnosed major depression and rule out bipolar II disorder, and assigned a GAF score of 55.[62] Ms. Depew created a treatment plan that included medication and counseling.[63]

---

[53] *Id.*
[54] *Id.* at 459–61.
[55] *Id.* at 459.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.* at 460.
[61] *Id.*
[62] *Id.* at 461.
[63] *Id.*

Plaintiff saw Ms. Depew again on January 18, 2013. Plaintiff stated she was feeling okay, but was weak and tired.[64] Ms. Depew noted that Plaintiff was alert, oriented, calm, and cooperative.[65] Plaintiff had good behavior control, normal eye contact, and had a normal rate and rhythm of speech.[66] Ms. Depew altered Plaintiff's medication and continued counseling.[67]

Plaintiff saw Dr. Cress on January 25, 2013.[68] Plaintiff reported that she was unable to function in employment.[69] Dr. Cress noted mild progress in Plaintiff's treatment and continued counseling.[70] A visit with Dr. Cress on February 7, 2013, was similar.[71]

On February 8, 2013, Plaintiff reported to Ms. Depew that she was feeling okay, but was gaining weight possibly because of her medications.[72] Ms. Depew noted that Plaintiff was alert, oriented, calm, and cooperative.[73] She had good behavioral control, normal eye contact, and her speech was normal.[74] However, her mood and affect were depressed.[75] Ms. Depew continued Plaintiff on medication without change and continued counseling.[76]

---

[64] *Id.* at 458.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.* at 457.
[69] *Id.*
[70] *Id.*
[71] *Id.* at 456.
[72] *Id.* at 455.
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*

On February 22, 2013, Plaintiff reported that she was doing better on her current medication, but was still gaining weight.[77] Ms. Depew adjusted Plaintiff's medication and continued her counseling.[78]

Plaintiff saw Dr. Cress on February 28, 2013.[79] Dr. Cress noted some progress and continued treatment.[80] Dr. Cress' treatment notes from Plaintiff's visits in April and May 2013 are similar.[81]

Plaintiff saw Ms. Depew on March 29, 2013.[82] Plaintiff stated that she was feeling better on her new medication and that she was losing weight.[83] Ms. Depew noted good mood stability.[84] Plaintiff's medication was increased and her counseling was continued.[85]

On April 4, 2013, Dr. Cress completed a Medical Source Statement of Ability to Do Work-Related Activities.[86] On that form, Dr. Cress stated that Plaintiff had marked restrictions in her ability to understand and remember simple instructions, understand and remember complex instructions, carry out complex instructions, and the ability to make judgments on complex work-related decisions.[87] Dr. Cress stated that Plaintiff had severe memory

---

[77] *Id.* at 454.
[78] *Id.*
[79] *Id.* at 453.
[80] *Id.*
[81] *Id.* at 447–51.
[82] *Id.* at 452.
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.* at 415–17.
[87] *Id.* at 415.

9

impairment, including short-term, recall, and long-term.[88] Dr. Cress further stated that Plaintiff had marked restrictions in her ability to interact appropriately with the public and to respond appropriately to usual work situations and to changes in a routine work setting.[89] Dr. Cress stated that Plaintiff had extreme restrictions in her ability to interact appropriately with supervisors and co-workers.[90] Dr. Cress believed that Plaintiff had a limited ability to handle stress because of pain and depression.[91] He further opined that Plaintiff could not focus, attend, or concentrate, and could not sustain output over a modest period of time.[92] Finally, Dr. Cress stated that Plaintiff had limited energy, both physical and mental, due to extreme anxiety and depression.[93]

In November 2013, Dr. Cress completed a Medical Opinion Questionnaire.[94] On that form, Dr. Cress indicated that Plaintiff's ability to perform the following activities was either poor or nonexistent:

- maintain socially appropriate behavior
- adhere to basic standards of neatness and cleanliness
- remember work-like procedures
- maintain attention for a two hour segment
- maintain regular attendance and be punctual within customary, usually strict tolerances
- sustain an ordinary routine without special supervision

---

[88] *Id.*
[89] *Id.* at 416.
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.* at 465–67.

10

- work in coordination with or proximity to others without being unduly distracted
- complete a normal workday and workweek without interruptions from psychologically based symptoms
- perform at a consistent pace without an unreasonable number and length of rest periods
- accept instructions and respond appropriately to criticism from supervisors
- get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes
- respond appropriately to changes in a routine work setting
- deal with normal work stress
- understand and remember detailed instructions
- carry out detailed instructions
- set realistic goals or make plans independently of others
- deal with stress of semiskilled and skilled work[95]

In a letter submitted with the Medical Opinion Questionnaire, Dr. Cress stated:

Ms. Whittle was under my psychological care from November 2012 until September 2013. At that time, she became homeless and left the area. During that time interval I saw her between one and two times a month. She has the diagnoses of major depression and bipolar II. Symptoms include suicidal thoughts with a plan, significant sleep disturbance, and significantly decreased appetite. She experienced ongoing fatigue, lethargy, and anhedonia. She felt hopeless and helpless and had no motivation to do anything. During the time I saw her, she was often in a melancholic state. She reported that she tried to work but was unable to sustain any level of productivity. She has been on a host of antidepressant medications including Prozac, Celexa, Effexor, and Lexapro. None of the medications appeared to alleviate her significant depressive symptoms. In addition to her psychological symptoms, she also has a history of anemia, lower back pain, and dumping syndrome. We have been able to work through suicidal episodes through intense psychotherapy and "no suicide contracts."[96]

---

[95] *Id.* at 466–67.

[96] *Id.* at 468.

C.     HEARING TESTIMONY

At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert. Plaintiff testified that she suffered from lower back pain and anemia.[97] Plaintiff explained that her back pain radiated down her left side and that her anemia made her dizzy.[98] Plaintiff further testified that she suffered from ulcers, which sometimes left her in severe pain.[99] Plaintiff stated that she could make simple meals, do some chores, and go grocery shopping.[100] Plaintiff also stated that she suffers from stress and anxiety.[101] She went on to testify that she suffers from panic attacks and can have as many as two or three a day.[102] Plaintiff stated that she could only walk from one room to the next before needing a break, could stand for 15 minutes at a time, and could sit for up to 45 minutes or an hour before needing to stretch.[103]

The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience who could do sedentary work within the following restrictions: no climbing ladders, ropes, or scaffolds; occasional crouching, kneeling, crawling, and climbing ramps and stairs; avoid concentrated exposure to extreme temperatures, excessive vibration, poorly ventilated areas, moving machinery, and unprotected heights; occasional interaction with coworkers; and no interaction with the general public.[104] The vocational expert

---

[97] *Id.* at 48–49.
[98] *Id.* at 49.
[99] *Id.* at 52.
[100] *Id.* at 53–54.
[101] *Id.* at 55.
[102] *Id.* at 56.
[103] *Id.* at 57–58.
[104] *Id.* at 64.

testified that such an individual could perform Plaintiff's past relevant work as a data entry clerk and transcriptionist.[105]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 8, 2011, the alleged onset date.[106] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, ulcers, anemia, affective disorder, and anxiety disorder.[107] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[108] At step four, the ALJ determined that Plaintiff could perform her past relevant work and, therefore, was not disabled.[109]

## III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Plaintiff's treating specialist; and (2) the ALJ erred by failing to consider Plaintiff's work history in his credibility analysis.

---

[105] *Id.* at 65.
[106] *Id.* at 23.
[107] *Id.* at 23–24.
[108] *Id.* at 24–25.
[109] *Id.* at 31.

13

A.	TREATING PHYSICIAN

Plaintiff first takes issue with the ALJ's treatment of Dr. Cress's opinion. An ALJ must review every medical opinion.[110] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[111] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[112] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[113] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[114]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[115] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[116]

---

[110] 20 C.F.R. § 404.1527(c).

[111] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

14

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[117] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[118]

Plaintiff began treatment with Dr. Cress in late November 2012. On April 4, 2013, Dr. Cress completed a Medical Source Statement of Ability to Do Work-Related Activities.[119] On that form, Dr. Cress stated that Plaintiff had marked restrictions in a number of areas, including her ability to understand and remember simple instructions, understand and remember complex instructions, carry out complex instructions, and the ability to make judgments on complex work-related decisions.[120] Dr. Cress stated that Plaintiff had severe memory impairment, including short-term, recall, and long-term.[121] Dr. Cress further stated that Plaintiff had marked restrictions in her ability to interact appropriately with the public and to respond appropriately to usual work situations and to changes in a routine work setting.[122] Dr. Cress stated that Plaintiff had extreme restrictions in her ability to interact appropriately with supervisors and co-workers.[123] Dr. Cress believed that Plaintiff had a limited ability to handle stress because of pain and depression.[124] He further opined that Plaintiff could not focus, attend, or concentrate, and

---

[117] *Id.*
[118] *Id.*
[119] R. at 415–17.
[120] *Id.* at 415.
[121] *Id.*
[122] *Id.* at 416.
[123] *Id.*
[124] *Id.*

15

could not sustain output over a modest period of time.[125] Finally, Dr. Cress stated that Plaintiff had limited energy, both physical and mental, due to extreme anxiety and depression.[126]

In November 2013, Dr. Cress completed a Medical Opinion Questionnaire.[127] On that form, Dr. Cress indicated that Plaintiff's ability to perform the following activities was either poor or nonexistent:

- maintain socially appropriate behavior
- adhere to basic standards of neatness and cleanliness
- remember work-like procedures
- maintain attention for a two hour segment
- maintain regular attendance and be punctual within customary, usually strict tolerances
- sustain an ordinary routine without special supervision
- work in coordination with or proximity to others without being unduly distracted
- complete a normal workday and workweek without interruptions from psychologically based symptoms
- perform at a consistent pace without an unreasonable number and length of rest periods
- accept instructions and respond appropriately to criticism from supervisors
- get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes
- respond appropriately to changes in a routine work setting
- deal with normal work stress
- understand and remember detailed instructions
- carry out detailed instructions
- set realistic goals or make plans independently of others
- deal with stress of semiskilled and skilled work[128]

---

[125] *Id.*

[126] *Id.*

[127] *Id.* at 465–67.

The ALJ gave little weight to Dr. Cress' opinion. In reviewing Dr. Cress' opinion, the ALJ stated that there was "no objective support in the record for [his] drastic opinion, either in the treatment notes of Ms. Depew . . . or in Dr. Cress' treatment notes."[129] The ALJ went on to evaluate Dr. Cress' treatment notes and found that the objective findings contained therein were "not consistent with Dr. Cress' opined severity of the claimant's limitations."[130]

As set forth above, the ALJ must first determine whether the opinion is well-supported and consistent with other substantial evidence. Here, the ALJ found that Dr. Cress' opinion was not supported and was inconsistent with the medical record. This conclusion is supported by substantial evidence. While Dr. Cress stated that Plaintiff had extreme limitations in a number of areas, that opinion is not supported by the evidence, including Dr. Cress' own treatment notes. Therefore, the ALJ was not required to give Dr. Cress' opinion controlling weight.

Even if not given controlling weight, the ALJ must evaluate the opinion using the above-listed factors and must provide good reasons for the weight ultimately given to that opinion. Though the ALJ did not discuss all of these factors, it is clear that the ALJ evaluated Dr. Cress' opinion using these factors. In so doing, the ALJ provided specific, legitimate reasons for giving little weight to that opinion. Specifically, the ALJ found that Dr. Cress' opinion was not supported by objective evidence, was not supported by the treatment notes of Dr. Cress and Ms. Depew, and was not consistent with the other evidence in the record. These are all good reasons, supported by substantial evidence, allowing the ALJ to give Dr. Cress' opinion little weight. Therefore, the Court finds no error in the ALJ's treatment of Dr. Cress' opinion.

---

[128] *Id.* at 466–67.

[129] *Id.* at 30.

[130] *Id.* at 31.

17

B.  PLAINTIFF'S CREDIBILITY

Plaintiff next contends that the ALJ erred in his credibility determination. Social Security Ruling 96-7p sets out relevant factors an ALJ should consider in determining credibility. These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[131]

In determining credibility, the ALJ must consider the entire case record.[132] However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . . ."[133] An ALJ's "[c]redibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence."[134]

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[131] SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

[132] *Id.*

[133] *Qualls*, 206 F.3d at 1372.

[134] *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (quotation marks omitted).

18

entirely credible."[135]  Plaintiff argues that the ALJ erred in failing to consider her work history in making his credibility determination.[136]

Plaintiff is correct that the ALJ did not specifically mention her work history in his credibility analysis.  However, her prior work was clearly in the record and was discussed by the ALJ in his determination that Plaintiff could perform her past relevant work.  The ALJ specifically stated that he had considered all of the evidence.[137]

Moreover, there is substantial evidence to support the ALJ's credibility determination.  As set forth above, the objective medical evidence does not support a finding that Plaintiff's symptoms were as disabling as Plaintiff asserted.  Further, the evidence concerning Plaintiff's activities of daily living provide support for the ALJ's credibility determination.  This evidence showed that Plaintiff was able to live on her own, take care of her household, care for her cats, shop on her own, and otherwise take care of her daily needs.  As the ALJ correctly noted, Plaintiff's "wide range of activities suggest that her limitations are not as significant as alleged."[138]  Thus, while Plaintiff does have an exemplary work history, that history was just one of many factors the ALJ could take into account in determining Plaintiff's credibility.  Therefore, reversal is not required on this ground.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court finds that the ALJ's evaluation and ruling is supported by substantial evidence.  Therefore, the Commissioner's

---

[135] R. at 26.

[136] *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *5.

[137] R. at 21.

[138] *Id.* at 26.

findings must be affirmed.  Further, the Court finds that the ALJ applied the correct legal standard in determining that Plaintiff is not disabled.

For the reasons just stated, the Court hereby AFFIRMS the decision below.  The Clerk of the Court is directed to close this case forthwith.

DATED this 6th day of January, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge